HONORABLE BENJAMIN SETTLE
HONORABLE MARY ALICE THEILER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

SHAWN PETERSEN,

    Plaintiff,

v.

DEPUTY MATTHEW SMITH, an individual, and PIERCE COUNTY, a municipal corporation,

    Defendants.

No. 19-cv-006022-BHS-MAT

COMPLAINT FOR DAMAGES

## I.   INTRODUCTION

1.1   Pierce County policy allows for, encourages, and trains its sheriff's deputies to use a "Lateral Vascular Neck Restraint" (LVNR or "vascular neck restraint" or VNR) technique to subdue alleged criminal suspects in situations that call for lower levels of force. As a force technique that frequently causes loss of consciousness, and which can be deadly force if done improperly or with a medically susceptible suspect, the LVNR technique is a substantial use of force that presents a significant intrusion on the suspect's civil rights.

1.2   On the night of May 23, 2019, Pierce County Sheriff's Deputy Matthew Smith observed a potentially intoxicated driver and pulled the vehicle over on the side of the road. Deputy Smith parked his patrol car in front of Shawn Petersen's house and left the flashing lights on. Not long after Deputy Smith pulled over, Mr. Petersen stepped out to the front of his house to ask Deputy Smith to move his patrol car. Deputy Smith refused. Mr. Petersen asked Deputy

COMPLAINT FOR DAMAGES - 1

No. 19-cv-006022-BHS-MAT

11910.01 mi090102

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Smith to at least turn off the patrol car lights, but Deputy Smith ignored Mr. Petersen. Mr. Petersen then explained that the patrol car was parked on private property and asked Deputy Smith to move down the block. Deputy Smith again refused to move his patrol car. Mr. Petersen asked Deputy Smith for his name and badge number and repeated his request for Deputy Smith to move the patrol car or turn off his lights. Deputy Smith refused to provide Mr. Petersen his name or badge number and accused him of interfering with his traffic stop. Mr. Petersen walked down his front driveway, stopped a good distance away from the patrol car, told Deputy Smith he was trespassing and asked Deputy Smith again to move his patrol car. Mr. Petersen did nothing to threaten Deputy Smith or others, and Deputy Smith had no reason to believe he posed a threat. Deputy Smith then approached Mr. Petersen, said "you're going in cuffs now," tackled him down to the ground, put him in a Lateral Vascular Neck Restraint, which constitutes a significant use of force that can be deadly, and arrested him for obstructing and resisting arrest. Mr. Petersen spent the night in Pierce County jail. A prosecutor later dropped all charges.

       1.3     Mr. Petersen brings this complaint for damages for violations of his Fourth and First Amendment rights, including but not limited the rights of free speech, and to be free from arrest without probable cause or excessive use of force, against Deputy Smith. He also brings a claim against Pierce County because its policy regarding the use of the LVNR technique was the moving force behind the violation of his Fourth Amendment rights to be free from the use of unreasonable and excessive force during an arrest.

## II. PARTIES

       2.1     Plaintiff Shawn Petersen is a citizen of the State of Washington and a resident of Pierce County.

       2.2     Defendant Matthew Smith is a citizen of the State of Washington and works in, or is a resident of, Pierce County.

       2.2     Defendant Pierce County is a municipal corporation formed under the laws of the State of Washington.

COMPLAINT FOR DAMAGES - 2

No. 19-cv-006022-BHS-MAT

11910.01 mi090102

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

### III. JURISDICTION

3.1  This Court has original subject matter jurisdiction pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. §§ 1331 and 1343.

3.2  Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

### IV. FACTUAL ALLEGATIONS

4.1  Pierce County policy allows for, encourages, and trains its sheriff's deputies to use a "Lateral Vascular Neck Restraint" (LVNR or "vascular neck restraint" or VNR) technique to subdue alleged criminal suspects in situations that call for lower levels of force. As a force technique that frequently causes loss of consciousness, and which can be deadly force if done improperly or with a medically susceptible suspect, the LVNR technique is a substantial use of force that presents a significant intrusion on the suspect's civil rights.

4.2  Late at night on May 23, 2019, Pierce County Sheriff's Deputy Matthew Smith initiated a traffic stop on Mundy Loss Road in Buckley, Washington. Deputy Smith pulled over his patrol car directly in front of Shawn Petersen's house at the bottom Mr. Petersen's driveway, blocking vehicles from leaving the driveway.

4.3  Mr. Peterson was concerned that the Deputy's enforcement action occurring right outside of his house could possibly become violent. He stepped outside to his front patio and asked Deputy Smith "Can you do this somewhere else, please?"

4.4  Deputy Smith refused. Mr. Petersen replied that the patrol car was on his private property and "my child is sleeping, you could at least turn your lights off. Thank you."

4.5  When Deputy Smith again refused, Mr. Petersen asked Deputy Smith to get his supervisor and for Deputy Smith's card. Deputy Smith replied "you can call him up" and ignored Mr. Petersen's request for his card. He then told Mr. Petersen to go back into his house.

4.6  Mr. Petersen continued to stand on the walkway near the top of the driveway.

COMPLAINT FOR DAMAGES - 3

No. 19-cv-006022-BHS-MAT

11910.01 mi090102

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Deputy Smith saw that Mr. Petersen was still outside, and twice yelled at Mr. Petersen "Get out of my sight – my stop right now" and "Get out of my stop right now."

4.7     Mr. Petersen again asked Deputy Smith to move the patrol car. Deputy Smith again refused, and Mr. Petersen walked into his house to retrieve his cellphone to record their interaction.

4.8     Mr. Petersen returned outside with his cellphone recording, walked down the driveway and asked for Deputy Smith's name and badge number. When Deputy Smith again refused Mr. Petersen's request, Mr. Petersen replied "you are on my property and I am asking you to please remove yourself and you won't give me your card or your badge number or your name."

4.9     Deputy Smith ignored Mr. Petersen. Mr. Petersen repeated his request: "Sir, I am asking you to please get off of my property. My child is sleeping. Your lights need to be off or you need to go somewhere else. Please, I am asking you politely officer, please."

4.10    Mr. Petersen again asked for Deputy Smith's card, name, and badge number. Deputy Smith replied that Mr. Petersen was interfering with a traffic stop. At that point, Deputy Smith was walking back to his patrol car from the vehicle that had been pulled over for the traffic stop. Mr. Petersen, at least 15-20 feet away from Deputy Smith's patrol car and still on his property, stated that he was not interfering but that Deputy Smith was trespassing.

4.11    Deputy Smith sat down inside the patrol car, and continued to ignore Mr. Petersen's repeated requests. Mr. Petersen walked a few feet closer to the patrol car and stopped. Deputy Smith then got out of his patrol car, approached Mr. Petersen and told him "don't approach my car again, get back inside the house." Mr. Petersen calmly replied "No, you are trespassing. Get off of my property."

4.12    Mr. Petersen never made any threatening comments or movements towards Deputy Smith. Deputy Smith had no reason to believe Mr. Petersen posed a threat, nor would any reasonable officer have perceived Mr. Petersen as a threat.

4.13    Deputy Smith walked up to Mr. Petersen, who was standing on his property in his

COMPLAINT FOR DAMAGES - 4

No. 19-cv-006022-BHS-MAT

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11910.01 mi090102

driveway, and told him "you're going in cuffs right now." As Deputy Smith approached, Mr. Petersen took a step back. Deputy Smith then tackled Mr. Petersen to the ground, seized his cellphone, put him in "vascular neck restraint," or "VNR."

4.14    As Deputy Smith applied the VNR, Mr. Petersen gasped for air and tried to tell Deputy Smith twice "I can't breathe." Deputy Smith continued to apply the VNR, causing Mr. Petersen to lose consciousness for an unknown amount of time.

4.15    When Mr. Petersen regained consciousness, Deputy Smith arrested him, and took Mr. Petersen's cellphone to place it into evidence.

4.16    Deputy Smith requested an ambulance to the scene to evaluate Mr. Petersen. Per Pierce County Sheriff's Department policy, individuals rendered unconscious by a VNR must be "promptly examined by paramedics" and placed under visual observation for two hours.

4.17    Mr. Petersen spent the night in Pierce County jail and was charged with Obstructing a Law Enforcement Officer and Resisting Arrest. He was released the following day when his wife posted the $1,000 bond.

4.18    Mr. Petersen sought immediate medical care for pain in his throat due to the chokehold unnecessarily applied by Deputy Smith. Mr. Petersen's doctor prescribed medication to manage his neck pain.

4.19    Mr. Petersen expended money to hire an attorney to defend the charges Deputy Smith filed against him.

4.20    A Pierce County Deputy Prosecutor later dropped all charges. Upon seeing the video from Mr. Petersen's cellphone, the prosecutor wrote:

> "I have viewed it and have decided to dismiss the case. While I think Deputy Smith might be able to explain some of the inconsistencies between the report and the videos, I do think the videos prevent the state from proving the case beyond a reasonable doubt. …I do not believe the conduct depicted by videos rises to the level of obstruction. Obviously, the videos are more powerful evidence than any explanation Deputy Smith might be able to offer." (legal citations omitted)

4.21    Deputy Smith caused Mr. Petersen physical pain and emotional distress as a result of the unconstitutional conduct.

COMPLAINT FOR DAMAGES - 5

No. 19-cv-006022-BHS-MAT

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11910.01 mi090102

4.22    Deputy Smith seized Mr. Petersen when he tackled, handcuffed, and arrested him.

4.23    Mr. Petersen was not violent. He made no attempt to evade arrest. As Deputy Smith pulled out his handcuffs, Mr. Petersen merely stepped back.

4.24    Mr. Petersen posed no threat to the safety of Deputy Smith, the ride-along civilian in Deputy Smith's patrol car, or anyone else. Mr. Petersen's hands were visible at all times. Mr. Petersen did not make any verbal threats—he politely, but firmly, made requests of Deputy Smith for information and to move his patrol car off of private property.

4.25    At no point did Mr. Petersen act in an unlawful manner. For the duration of the incident, Mr. Petersen remained on his own private property, and filmed Deputy Smith's conduct the traffic stop from a location well beyond any place Mr. Petersen would physically interfere with Deputy Smith.

4.26    Deputy Smith lacked probable cause and used excessive force when arresting Mr. Petersen, tackling him to the ground and using an VNR on a non-violent individual. This use of force was unreasonable, unnecessary, and unconstitutional.

4.27    Deputy Smith interfered with Mr. Peterson's right to free speech when he retaliated against Mr. Petersen and punished him for criticizing him and asking him to move to another location.

4.28    Deputy Smith violated Mr. Petersen's clearly established constitutional rights when he arrested and subdued him, in violation of the First and Fourth Amendments.

4.29    Following the arrest, Deputy Smith filled out an Arrest report and a Use of Force report. In the Arrest report, Deputy Smith wrote that "Shawn refused to give up and was actively resisting arrest" to justify his use of a VNR. In the Use of Force report, Deputy Smith similarly wrote "I attempted to place the subject under arrest and he resisted. I used a vascular neck restraint to get the subject into custody."

4.30    Deputy Smith's Use of Force report went through two levels of supervisory review. First, PCSD Sergeant Walter Brown concluded "Use of force appears reasonable under the totality of the circumstances." Second, PCSD Lieutenant Rustin Wilder found that the "Use

COMPLAINT FOR DAMAGES - 6

No. 19-cv-006022-BHS-MAT

11910.01 mi090102

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

of force appears to be reasonable." Pierce County has ratified Deputy Smith's use of force in this case.

4.31  Many jurisdictions have banned the practice of using the VNR because of the likelihood of injury. Pierce County Sheriff's Department policy authorizes the use of VNR as a "non-deadly force application."

4.32  Pierce County Sheriff's Department policy authorizes officers to use the VNR tactic to the point of unconsciousness to force compliance on "an actively resistive or combative offender."

4.33  PCSD has created two levels of VNR – with and without application of bilateral pressure to a subject's neck – either of which may be applied depending on the "suspect's resistance level." However, in practice, there is no meaningful distinction between the two VNR levels and officers cannot consistently calibrate the pressure applied when forcing compliance on subjects. The vast majority of applications end up with the use of the second level of VNR.

4.34  Pierce County Sheriff's Department policies, practices, and customs were the moving force behind Deputy Smith's actions, which deprived Mr. Petersen of his constitutional rights. At all times relevant, Deputy Smith acted pursuant to the policies, practices, and customs of the Pierce County Sheriff's Department.

## V.   CLAIMS

5.1  By virtue of the facts set forth above, Defendant Matthew Smith is liable for compensatory damages for deprivation of the civil rights of Plaintiff Shawn Petersen guaranteed by the First and Fourth Amendments to the Constitution of the United States and 42 U.S.C. §1983, to speak freely and to be free from unreasonable seizures. Defendant Smith is also liable for punitive damages for acting with malice, oppression, or reckless disregard for Plaintiff Petersen's First and Fourth Amendment rights.

5.2  By virtue of the facts set forth above, and as a result of its policies, practices, customs, and usages, Defendant Pierce County caused Mr. Petersen to be deprived of rights guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C.

COMPLAINT FOR DAMAGES - 7

No. 19-cv-006022-BHS-MAT

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11910.01 mi090102

§1983, the right to be free from unreasonable seizures.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

6.1 Declaratory judgment declaring Pierce County's policy unconstitutional, and that the force used in this case was unreasonable and excessive in violation of the Fourth Amendment.

6.2 Compensatory damages for physical injury, pain, and suffering;

6.3 Compensatory damages for severe emotional distress and mental harm;

6.4 Compensatory damages for medical expenses;

6.5 Compensatory damages for legal expenses incurred to defend against the charges Deputy Smith brought against him;

6.6 Punitive damages from the individual Defendant Deputy Smith for acting with malice, oppression, or reckless disregard for Plaintiff Petersen's First and Fourth Amendment rights.;

6.7 Costs, including reasonable attorneys' fees incurred in this action, provided under 42 U.S.C. 1988 and to the extent otherwise permitted by law;

6.8 Leave to amend the pleadings to confirm the evidence at trial; and

6.9 Such other relief as may be just and equitable.

DATED this 28th day of May, 2020.

MacDONALD HOAGUE & BAYLESS

By: /s/Joe Shaeffer
Joe Shaeffer, WSBA #33273
joe@mhb.com
/s/Mika Rothman
Mika Rothman, WSBA#55870
mikar@mhb.com

Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES - 8

No. 19-cv-006022-BHS-MAT

11910.01 mi090102

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961