U.S. District Judge Benjamin H. Settle
U.S. Magistrate Judge Mary Alice Theiler

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAWN PETERSEN,

                            Plaintiff,

vs.

DEPUTY MATTHEW SMITH, an individual, and PIERCE COUNTY, a municipal corporation,

                            Defendants.

NO.  3:19-cv-06033-BHS-MAT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Noted on Motion Docket:  12/4/2020

## I.    **INTRODUCTION**

Defendants Deputy Matthew Smith and Pierce County move the Court for an order dismissing Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 56.  Deputy Smith is entitled to qualified immunity, and as such, the claims against him and Pierce County should be dismissed.

The facts are largely undisputed and were captured by two videos.  One video is from the front porch security camera, and the other is from Petersen's cell phone.  *See* Declaration of Helmberger, Exhibits 1 and 2, respectively; *see, also*, Pltf's MPSJ, Ex. 12, 13.

Petersen is trying to establish liability based on the proper use of a vernacular neck restraint (VNR), which Deputy Smith used on Petersen while Petersen was resisting arrest for obstruction of justice.  The arrest for obstruction was proper because Petersen posed a risk to Deputy Smith.  Use of the VNR was proper because Petersen resisted arrest.  Petersen employed

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

the VNR consistent with training, for a few seconds, and did not cause any lasting or meaningful injury.  Rather than claim the VNR was inappropriately applied in terms of the grip or the duration, Petersen rather simply claims the VNR should only be used when lethal force is justified.  However, there is no case law defining the Fourth Amendment right in this fashion, and as such, Deputy Smith is entitled to qualified immunity, and the claims against Deputy Smith and the County should be dismissed.

## II.   STATEMENT OF FACTS

### A.   FACTS UNDERLYING THE INCIDENT

On May 23, 2019, at about 9:45 p.m., Deputy Smith, along with a ride-along passenger, was patrolling on Mundy Loss Road in rural Bonney Lake when the driver of an oncoming car crossed the centerline.  *Declaration of Matthew Smith*, ¶3.  Mundy Loss Road falls into the patrol area known as the "Foothills Detachment," which covers an area of 632 square miles in rural Pierce County.  Typically, there were only two officers on patrol during that time of the evening – as was the case that evening – and back-up is often 20 minutes away.  *Decl. Smith*, ¶2.

Deputy Smith turned his patrol vehicle around, and at the same time the driver of the suspect vehicle had pulled over on a wide spot in the road in front of Petersen's house.  *Decl. Smith*, ¶2.  Deputy Smith pulled in directly behind the driver with the emergency lights activated, which is customary practice and policy.  *Decl. Smith*, ¶3.  Deputy Smith immediately approached the stopped vehicle making a driver's side contact.  *Decl. Smith*, ¶4.

Petersen immediately noticed the lights and went outside and began to verbally engage with Deputy Smith.  The first video shows Petersen made various requests – that Deputy Smith move the stop, turn off his lights, contact his supervisor, provide his badge number and card, he was trespassing, etc. – to which Deputy Smith repeatedly responded with "no" and telling

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1    Petersen to "get out of his stop" and stop interfering, or words to that affect.[1]  *Decl. Smith*, ¶5.

2    After about 40 seconds, Petersen did go back into his house only to retrieve his cell phone and

3    come back out of his house.

4         At this point, Petersen moved to about halfway to two-thirds down the driveway toward

5    the patrol car.  As Sergeant Youngman put it, "anybody trained in police would be very

6    concerned" by a person going back in the house and immediately coming back outside.  *Decl.*

7    *Helmberger, Dep. of Youngman*, 52:25-53:9.

8         The second video picks up where the first video leaves off.  The verbal exchange

9    continued, which was basically Petersen repeatedly making demands of Deputy Smith, Deputy

10   Smith telling Petersen to go back inside, and Petersen ignoring those commands.  Although

11   Smith described Petersen as interfering in his stop, and though Petersen was now closer in

12   proximity, Deputy Smith did not feel the risk was enough to deviate from Smith's goal to quickly

13   conclude the traffic stop and move to a safer location.  *Decl. Smith*, ¶6.

14        At about the 50 second mark of the cell phone video (the second video) (1:50 of the

15   encounter), Deputy Smith had returned to his patrol vehicle and continued to process the stop

16   while Petersen continued to make demands.  *Decl. Smith*, ¶7, 8.[2]  Deputy Smith ignored Petersen

17   and went about his business regarding the suspect driver.  Deputy Smith called for backup, and,

18

19

20   _____

     [1]  The driver of the stopped vehicle was a suspected impaired driver given the stop was in the evening on a dark
21   rural road, and the driver had already exhibited poor lane travel by crossing the center line and coming into
     oncoming lanes.  *Decl. Smith*, ¶5.  It would have violated policy and procedures to place a suspected impaired driver
22   back on the roadway thereby creating a threat of injury to the driver, public, and Deputy Smith.  In his 13 years of
     working as a Law Enforcement Officer, Smith has never directed a suspected impaired driver to move to a different
     location once a traffic stop was initiated.  *Decl. Smith*, ¶5.
23   [2]  Deputy Smith did not notice any obvious signs of impairment, and the driver explained that some food fell to the
     passenger floorboard while he was turning onto Mundy Loss Rd E from State Route 410 E and that he was reaching
24   towards to the passenger floorboard to retrieve the food, which caused his vehicle to swerve into the oncoming lane
     of travel.  *Decl. Smith*, ¶7.  However, there were still some process that had to be done before Deputy Smith could
     end the traffic stop.  *Decl. Smith*, ¶7.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1   in fact, was concerned enough at one point to request that the backup "step it up," which is code

2   for "hurry up." *Dep. of Youngman*, 26:7-16.

3        After 30 seconds, at the 1:20 mark of the second video (2:20 into the encounter) Petersen

4   began to approach the patrol car.  While he was approaching, Smith noticed what appeared to be

5   a folding knife in his front pocket as he could see the outline of the knife and the clip outside his

6   pocket. *Smith Decl.*, ¶8.  Petersen said he was carrying a knife and that he always does. *Petersen*

7   *Dep*., 42:1-43:7.

8        As Petersen came closer to the patrol car, he had an unobstructed path and the ability to

9   gain access to Deputy Smith's front seat passenger and eventually Deputy Smith.  *Decl. Smith*,

10  ¶8.  Coming too close to the passenger would prevent Smith from being able to protect the

11  passenger, and it was not clear if Petersen was armed with any other weapons. *Decl. Smith*, ¶8.

12  According to Deputy Smith, by approaching the vehicle, Petersen created a situation where

13  circumstances were tense and rapidly evolving and forced Deputy Smith to make a split-second

14  decision. *Decl. Smith*, ¶9.  Deputies are trained not to wait in their vehicle because they are

15  essentially trapped with limited means to defend themselves. *Youngman Dep*. 27:13-28:11.

16       At that point, Deputy Smith's attention was turned completely toward Petersen, and his

17  focus was no longer on the driver. *Youngman Dep*., 54:20-55:9.  According to Deputy Smith,

18  Petersen's actions hindered, delayed, and stopped him from finishing his original investigation,

19  which created probable cause for obstruction. *Decl. Smith*, ¶9.

20       Deputy Smith got out of his car, approached Petersen, directed him to return to his house,

21  but it was readily obvious that Petersen was not going to obey those commands as instructed.

22  *Smith Decl.*, ¶10; *Youngman Dep*., 57:25-58:24.  When Smith told him "he was going into"

23  handcuffs, Petersen turned, pulled his arm away, and started towards the front door of the

24  residence while actively resisting arrest. *Smith Decl.*, ¶10.  Smith pursued him and tackled him.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

Deputy Smith explained, it was dark outside, he was a solo officer with no immediate back up, was concerned with Petersen's proximity to weapons, the safety of his ride-along, and a still yet unresolved traffic stop. *Decl. Smith*, ¶10. Petersen's behavior was erratic, already showed he had a knife, and already demonstrated his potentially threatening behavior and failure to follow commands. Deputy Smith was worried about what might happen next, there was a potential threat by Petersen returning to his home where he may potentially have access to more weapons. *Decl. Smith*, ¶10; *Dep. Youngman*, 68:15-69:14. In addition, when a suspect is resisting going into cuffs, one of the most effective ways to gain control is to take the suspect to the ground as it takes away their systemic strength, and it is much easier to get a person into handcuffs rather than when the resistant person is standing, which is very difficult. *Youngman Dep.*, 68:12-70:24.

Once Smith had Petersen on the ground, he applied the Vernacular Neck Restraint (VNR) hold. *Decl. Smith*, ¶10. However, Petersen continued to actively resist by trying to get up and struggle to get free and failed to obey Deputy Smith's command to "stop resisting." Petersen testified that he recalled Deputy Smith "screaming at" him to stop resisting. *Dep. Petersen*, 46:4-14. Because Petersen continued to resist, failed to comply with the commands to stop resisting, as he failed to comply with other commands, Deputy Smith tightened the grip, and Petersen quickly lost consciousness. Smith placed him under arrest for obstructing a law enforcement officer. *Decl. Smith*, ¶10.

Deputy Smith made the split-second decision to quickly secure the scene with the VNR as it was a more appropriate level of force than a taser, OC spray, or baton, which would have potentially inflicted bodily pain. *Smith Decl.*, ¶13. Because Petersen lost consciousness, Deputy Smith immediately called for an ambulance to medically evaluate Petersen's injuries related to his loss of consciousness, and began the two-hour observation period, per policy. *Smith Decl.*,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

¶11.  After Smith got Petersen into custody, backup arrived and helped secure the scene.  *Smith Decl.*, ¶11.  Medics arrived at the location, and Petersen told them he was not injured and refused a medical evaluation.  *Decl. Smith*, ¶14.

On June 5, Petersen was seen by an Ear, Nose, and Throat specialist's office to evaluate pain complaints.  *See Dep. of Mary Becker, D.O.*, 6:6-16.  The exam and x-rays showed a normal throat and no sign of blunt force trauma or the like.  *Dep. Becker*, 10:7-17; 11:17-12:3.  The exam was normal, and while a CT scan was scheduled, Petersen no-showed.  *Dep. Becker*, 13:22-15:2.

**B.  FACTS RELATED TO USE OF THE VNR**

Deputy Smith has been trained repeatedly on the use of the VNR.  *Smith Decl.*, ¶12.  He was first trained on November 17, 2007, and has completed annual trainings every year at the Pierce County Sheriff's Department's in-service training (Defensive Tactics).  *Smith Decl.*, ¶12.  As part of this training, Smith has performed the VNR over a dozen times and, in turn, has had it performed on him and lost consciousness on many occasions.  *Smith Decl.*, ¶12.  This technique is less painful than a taser, OC Spray, baton, and arm-bars.  A VNR is not a deadly force technique if it used properly and consistent with how PCSD trains deputies to use the VNR.  *Smith Decl.*, ¶12.

The PCSD authorizes the use of a VNR to gain compliance with a detainee.  Deputies are initially trained by Master Sergeant Youngman or one of PCSD's VNR certified instructors in an eight-hour course.  *Declaration of Youngman*, ¶4.  Some receive additional training in VNR as part of an optional after-hours program at the Washington State Criminal Justice Training

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1    Center.  Deputies are then recertified annually at the PCSD with a minimum of 4 hours of VNR

2    instruction.  *Decl. Youngman*, ¶4.[3]

3             PCSD Deputies are trained how to safely apply the technique, how it works, and how it

4    affects the body.  *Decl. Youngman*, ¶5.  They apply it numerous times and have it applied to

5    them.  Deputies are trained that the goal of a VNR application is to gain compliance and not

6    necessarily to render a subject unconscious, unless detainees continue to resist.  Deputies are also

7    trained that an effective VNR could place someone unconscious in a matter of seconds, typically

8    4-7 seconds, and that if they are holding the VNR for 10-15 seconds they should consider the

9    technique to be ineffective and transition to another force option as needed.  As such, the VNR

10   used in the manner in which PCSD trains does not carry with it a reasonable risk of death or

11   serious bodily injury.  *Decl. of Youngman*, ¶5, 6.  Medical research puts the time the brain can

12   survive without blood flow at about 4-6 minutes.  An application of a VNR for this length of

13   time would not only be physically difficult, but it would be a gross misuse of the technique.

14   Furthermore, Deputies are specifically trained not to use a "chokehold," which involves directly

15   compressing the larynx and trachea and are trained to recognize this improper technique, how to

16   avoid it, and how to transition away from it should they find themselves in it during a less than

17   deadly force encounter.  *Decl. Youngman*, ¶5.

18            PCSD's training and monitoring of the use of the technique ensures that a VNR would not

19   be held for these extreme lengths of time.  *Decl. Youngman*, ¶6.  In fact, the PCSD has

20   completed a study reviewing all of its VNR applications from 2016 to 2019 and it was used 330

21   times and resulted in zero reports of injuries attributed the VNR.  *Decl. Youngman*, ¶7; Exhibit 1.

22

23

24
___

[3]  This subject will be covered in more detail in response to Plaintiff's Motion for Partial Summary Judgment.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

For this study, all reported uses of the VNR at PCSD were reviewed.  Over half, 53 percent, of these cases resulted in no loss of consciousness for the subject.  There were zero reports of injuries or hospitalizations attributed to the VNR, and any injury that was reported were attributed to other tactics or occurrences that took place prior to or surrounding the time of the VNR application; such as, strikes, falls, taser probes, K9 bites, impact weapon strikes, joint injury from a different control hold, scrapes from a ground scuffle, prior self-inflicted injuries, and in one case an unrelated complaint of pain.  *Decl. Youngman*, ¶7.

### III.  QUESTIONS PRESENTED

1.  Should this Court dismiss Plaintiffs' First Amendment claim against Deputy Smith where there was no constitutional violation because Petersen approached the patrol vehicle thereby causing Deputy Smith to deviate from his stop, and even assuming otherwise, he is entitled to qualified immunity?

2.  Should this Court dismiss Plaintiffs' Forth Amendment claim against Deputy Smith where there was no constitutional violation because Petersen resisted arrest and light or moderate force was appropriate to gain compliance, and even assuming otherwise, he is entitled to qualified immunity?

3.  Should this Court dismiss Plaintiffs' *Monell* claim against the County where there was no constitutional violation, and the County is not deliberately indifferent to detainees when using the VNR?

4.  Should this Court deny the request for declaratory judgment given there was no constitutional violation and only speculation that excessive force might be used in the future?

### IV.  AUTHORITY AND ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner,* 780 F.2d 727 (9th Cir. 1985).  A genuine issue of material fact is one which would change the outcome.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").  *See, also,* Fed. R. Civ. P. 56(e).

A party seeking summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The burden on the moving party may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.  Once this burden is met, the nonmoving must go beyond the pleadings and provide admissible evidence demonstrating that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.  If the nonmoving party fails to establish the existence of a genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323-24.

**B.     PETERSEN DOES NOT HAVE A VALID CLAIM UNDER 42 U.S.C. § 1983**

       **1.     <u>Legal Standard</u>**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

L.Ed.2d 662 (1986).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1983).

The qualified immunity defense shields a government official from suit when he or she makes a decision that does not violate a clearly established constitutional right.  *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 160 Led.2d 583 (2004) (*citing Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  Qualified immunity encourages officials to exercise their discretion without the fear of liability when the state of the law is unclear or their actions are reasonable under the totality of the circumstances.  *Carlo v. City of Chino,* 105 F.3d 493, 500 (9th Cir. 1997).  Qualified immunity is more than a mere defense to liability; it is "an entitlement not to stand trial or face other burdens of litigation," and "is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The qualified immunity inquiry asks two questions:  (1) was there a violation of a constitutional right, and, if so, then (2) was the right at issue "clearly established" such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation. *Saucier*, 533 U.S. at 201-02.  If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity.  *See Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).  These questions can be addressed in whatever order the Court finds most efficient.  *See Pearson v. Callahan*, 55 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

The term "clearly established" requires that the unlawfulness be apparent in light of existing law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To show that a right was clearly established, a plaintiff must point to "existing precedent [that places] the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 Led.2d 1149 (2011). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

If no such single controlling authority exists, there must be a "robust 'consensus of cases of persuasive authority'" that defines the contours of the rights in question with a high degree of particularity. *Ashcroft*, 563 U.S. at 742. As the United States Supreme Court stated:

> "[T]here is no doubt that *Graham v. Connor* … clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson [v. Creighton]* 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640[, 107 S. Ct. 3034, 97 L.Ed.2d 523 (19887)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*, at 201-02.

*Saucier,* 533 U.S. at 201-02. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

## 2. Petersen's First Amendment Claim Fails Because He Interfered With the Traffic Stop by Distracting Smith From His Duties

Petersen's First Amendment claim should be rejected. By approaching Deputy Smith in his patrol car and thereby posing a risk which Deputy Smith needed to address, Petersen caused

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

Deputy Smith to deviate from the purpose of the traffic stop.  Accordingly, Deputy Smith had probable cause for an obstruction charge, and there was no violation of a clearly established constitutional right.

### a. There Was No Constitutional Violation

Petersen was placed under arrest for obstruction of a police officer in violation of RCW 9A.76.020 and resisting arrest in violation of RCW 9A.76.040.  Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed.  *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).  The crime of obstructing an officer has four essential elements:  1) an action or inaction that hinders, delays, or obstructs the officers; 2) while the officers are in the midst of their official duties; 3) the defendant knows the officers are discharging a public duty; 4) the action or inaction is done knowingly.  *Lassiter*, 556 F.3d at 1053 *citing* RCW 9A.76.020.  Resisting arrest occurs where a person intentionally prevents an attempt to place a person under a lawful arrest.  RCW 9A.76.040.

Petersen's First Amendment claim is based on his right to protest police activity.  *See City of Houston v. Hill*, 482 U.S. 451, 461-63, 107 S.Ct. 2502, 2510, 96 Led.2nd 398 (1987) (invalidating a county ordinance prohibiting verbally challenging an officer because "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Duran v. City of Douglas*, 904 F.2d 1372, 1377-78 (9th Cir. 1990) (obscene gestures and words directed towards the police officer did not create probable cause and the officer was not entitled to qualified immunity because "criticism of the police is not a crime").  *See, also, Mackinney v. Nielsen*, 69 F.3d 1002 (9th Cir. 1995) (probable cause did not exist to arrest

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

Mackinney for writing messages critical of the police in sidewalk chalk where it was apparent that Mackinney probably did not realize that the order he was momentarily failing to obey came from the police).

However, where a person takes "action" that interferes with the police officer's duties, probable cause will exist for a charge of obstruction. *See Nieves v. Bartlett*, 139 S.Ct. 1715 (2019); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010); *Lassiter*, 556 F.3d at 1049.  In *Lassiter*, officers responded to a domestic violence call with information that the suspect had threatened to cut his wife's throat.  *Lassiter*, 556 F. 3d 1049.  Upon entry, the officers insisted that Kenneth Lassiter sit down in the living room, away from any possible weapons.  However, he refused to sit and then grabbed the arm of an officer who tried to guide him to a chair, at which point the officer "pushed him to the floor and handcuffed him."  *Id.* at 1051.  Because Lassiter's behavior involved "[m]ore than just a momentary noncompliance with police orders," "made it impossible for the police to carry out their duty," and "had the practical effect of precluding the officers from securing the scene and investigating a possible assault," the Court determined the officers had probable cause.  *Lassiter*, 556 at 1053.  *See, also*, *Gravelet-Blondin v. City of Snohomish*, 665 Fed Appx 603, 605 (court upheld a jury verdict and jury instructions on claims for excessive force and false arrest because Blondin came within ten feet of the officers, disregarded as many as twelve police commands over a thirty-second period, showed no signs of compliance, and forced the arresting officer and other officers to turn their attention to Blondin and leave the suicidal individual, which could have had "disastrous consequences"); *State v. Lalonde*, 35 Wn. App. 54, 61-2, 665 P.2d 421 (1983) (The court emphasized that Lalonde had admitted he was attempting to get the officers to stop what they were doing and made clear that his obstruction was in "the acts which accompanied his words.").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

Here, Petersen obviously intended to interfere with the stop. He did not protest police activity as it pertained to the nature of the arrest, or generally, but rather his intention was for Deputy Smith to stop what he was doing and abide by Petersen's request to move the stop, call for his supervisor, provide name and badge number, etc. These requests were made repeatedly and in spite of repeated responses to the contrary.

The verbal exchange lasted almost two minutes, during which time Petersen remained on his driveway. When Deputy Smith returned to his patrol car and continued to process the stop, Petersen continued to repeat his various demands while Deputy Smith remained in his patrol vehicle, no longer verbally engaged with Petersen.

However, after 30 seconds Petersen had enough of the silent treatment and approached the patrol car coming sufficiently close to cast a shadow over the vehicle. It was not until Petersen got close enough to the vehicle to pose a risk to Deputy Smith's safety and the safety of others that Deputy Smith physically approached and confronted Petersen. As Deputy Smith explained, by moving close to the vehicle Petersen had a direct line to the passenger and Smith with limited means to defend himself and the passenger. At this point, Petersen's interference moved beyond verbal protest and instead forced Deputy Smith to turn his attention to Petersen, which could have had disastrous results.

There was no choice but to confront Petersen once he created a danger to Deputy Smith and his passenger, and Petersen caused Deputy Smith to deviate from his stop. Petersen moving toward the vehicle created probable cause for obstruction.

      **b.**    **There Was No Violation of a Clearly Established Constitutional Right**

Even if this Court were to decide that there was a constitutional violation, the constitutional right was not clearly established. There simply is no case which makes it clear that Deputy Smith's arresting Petersen violated a First Amendment right. In fact, the opposite is

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

clear from the case law.  In *Mackinny*, the alleged obstruction consisted of momentarily ignoring a police command where, arguably, the plaintiff was not aware the command was coming from an officer and there was never a threat to the officer.  Here, this was more than momentary, Petersen clearly knew what he was asking of Deputy Smith, and there was a threat to the officer and the ride-along.  *Mackinney* does not carve the contours of the right such that the First Amendment right to protest police activity extends to posing a physical risk to law enforcement officers, and there is no case that extends the First Amendment right that far.

This case is more like *Lassiter*.  In this case there was a physical intrusion into the police activity that required action by Deputy Smith.  There is simply no case analyzing the First Amendment in regards to protesting police activity that includes creating a physical threat to the police officer.  Once Deputy Smith was distracted from his duties investigating the traffic stop, Petersen crossed over from freely speaking to obstructing justice.  There is no case law which demonstrates the contours of the First Amendment right to include this sort of conduct.  Petersen's speech was not the but-for cause of the arrest, it was his conduct.  *See Nieves v. Bartlett*, 139 S.Ct. 1715 (2019); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010).

Deputy Smith is entitled to qualified immunity regarding Petersen's First Amendment claim.

### 3.   Deputy Smith Did Not Violate a Clearly Established Constitutional Fourth Amendment Right by Arresting or by the Use of Force in Making the Arrest

Petersen also claims a constitutional violation of his Fourth Amendment rights, presumably asserting there was no probable cause for his arrest (which, as shown above, there was), and because by using the VNR, Deputy Smith used excessive force in arresting Petersen.

### a.   Because Deputy Smith Had Probable Cause to Arrest Petersen, There Was No Violation of a Clearly Established Constitutional Right

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cty*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (citation and internal quotation marks omitted).  "Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" *Maxwell v. Cty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012) (*quoting United States v. Ricardo*, 912 F.2d 337, 342 (9th Cir. 1990).  "Probable cause exists where there is a fair probability or substantial chance of criminal activity." *United States v. Payatant Soriano*, 361 F. 3d 494, 505 (9th Cir. 2004).

As discussed above, probable cause existed for the charge of obstruction.  Petersen crossed the line from arguably protected speech to interfering with police activity when he approached Deputy Smith's patrol vehicle.  There is no case law establishing a constitutional violation, let alone a violation of a clearly established constitutional right.

**b.** **There Was No Constitutional Violation by Deputy Smith in Using the VNR to Gain Control of an Arrestee**

A Fourth Amendment claim of excessive force is analyzed under a reasonableness standard using the framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  While law enforcement does have the right to employ "some degree of physical coercion or threat thereof" to effect an arrest, police officers making an arrest use only the amount of force that is objectively reasonable in light of the circumstances facing them.  *Graham*, 490 U.S. 396-97; *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992) (as amended).  Determining whether the use of force was reasonable requires balancing the "nature and quality of the intrusion," or the use of force, on a person's liberty with the "countervailing government interests at stake." *Graham,* 490 U.S. at 396.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

Here, the nature and quality of the intrusion is consistent with the threat posed and in keeping with acceptable practices of gaining control of a detainee.  Police officers "need not avail themselves of the least intrusive means of responding;" rather, they need only act "within that range of conduct [identified] as reasonable."  *Billington v. Smith*, 292 F.3d 1177, 1188-89 (9th Cir. 2002); *Scott v. Heinrich*, 39 F. 3d 912, 915 (1994).

It is undisputed that the VNR as employed by Deputy Smith effectively secured the scene in a matter of seconds.  The amount of force here was on par with pain compliance techniques, which courts have found involve a "less significant" intrusion upon an individual's personal security than most claims of force, even when they cause pain and injury.  *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) (considering pain compliance techniques that caused bruises, pinched nerves, and a broken wrist, and finding no excessive force when injury-causing pain compliance holds such as arm and wrist twisting, a firm grip, and use of pressure points, were used against passively resisting demonstrators); *see, also, Draper*, 369 F.3d at 1278 (finding no excessive force when officer used Taser gun to effect the arrest of an uncooperative suspect for a traffic violation even though tasers cause excruciating pain while causing the body to go limp and helpless); *LaLonde v. County of Riverside*, 204 F.3d 947, 960-61 (9th Cir. 2000) (describing pepper spray effects as lasting up to forty-five minutes)*; Airpin*, 261 F.3d at 921-22 (finding no excessive force when physical force consisting of twisting an arm with enough grip to lift off the floor used to handcuff suspect who had refused to cooperate with an officer's requests for identification and stiffened her arm and attempted to pull free from the officer); *Bel-Montez v. City of Stockton*, 2017 WL 2633412, (E.D. Cal. June 19, 2017) (weight on the back of an arrestee who was resisting being put back into the patrol car after the jail directed the officers to take arrestee to the hospital necessary to subdue the arrestee).  Here, the nature of the intrusion was consistent with other non-lethal forms of compliance.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1    In considering the government interest at stake, under *Graham*, three factors must be

2  considered:  1) the severity of the crime at issue; 2) whether the suspect poses an immediate

3  threat to the safety of the officers or others; 3) whether the suspect is actively resisting arrest or

4  attempting to evade by flight.  *Graham*, 490 U.S. at 396; *Wilkinson v. Torres*, 610 F.3d 546, 550

5  (9th Cir. 2010).  These factors are not exclusive, and the court should consider the totality of the

6  circumstances.  *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

7    "The 'reasonableness' of a particular use of force must be judged from the perspective of a

8  reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham,* 490 U.S.

9  at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers

10  are often forced to make split-second judgments – in circumstances that are tense, uncertain, and

11  rapidly evolving – about the amount of force that is necessary in a particular situation."  Not every

12  push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates

13  the Fourth Amendment.  *Graham,* 490 U.S. at 396-97.

14    Here, the first factor – the severity of the crime – is satisfied.  While obstruction itself is

15  not necessarily thought of as a severe crime, Petersen was also resisting arrest and trying to return

16  to his home, which posed unknown risks.  The situation was deteriorating and escalating,

17  requiring Deputy Smith to make a split-second decision, and warranted being treated as a severe

18  crime.

19    Second, "[T]he most important single element of the three specified [*Graham*] factors [is]

20  whether the suspect poses an immediate threat to the safety of the officers or others."  *Chew v.*

21  *Gates,* 27 F.3d 1432, 1441 (9th Cir.1994).  This is easily satisfied.  There was a threat to Deputy

22  Smith, the ride-along passenger, the driver, and potentially Petersen himself.  Once Petersen

23  approached the patrol car and had a clear path to the passenger and ultimately Smith, Smith had to

24  act quickly and efficiently to secure the scene.  There were variables that Deputy Smith had to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

take into account such as not knowing if there was a gun in the home that Petersen was going to retrieve, Petersen had a knife, there was a passenger to protect, and a driver of the car, and back-up still at an unknown distance away.  Any number of things could have gone wrong if Deputy Smith did not end the encounter quickly.

The third factor – whether the detainee was actively resisting – is also easily satisfied. By turning away and moving/running in the direction of his home, Petersen was resisting arrest and not in compliance with Deputy Smith's commands and showed no inclination that at any point he was going to comply with the Deputy's commands.  In fact, it is undisputed that Petersen heard Deputy Smith say "stop resisting," and Petersen continued to ignore that command.  It is undisputed that Peterson was resisting arrest.

In addition to the *Graham* factors described above, a consideration of the totality of the circumstances may look to other factors as well.  *See Forrester v. City of San Diego*, 25 F.3d 804, 806 n. 2 (9th Cir. 1994).  Under the totality of the circumstances as mentioned above, Deputy Smith acted appropriately and within the parameters set by case law governing the Fourth Amendment.[4]

### c.    Not Clearly Established

Even if this Court were to find a constitutional violation, Deputy Smith is still entitled to qualified immunity because his actions did not violate a clearly established constitutional right. There simply is no case law which defines the contours of the right to be free from excessive

---

[4]  Under Washington law, force used by a police officer is not unlawful "[w]henever necessarily used ... in the performance of a legal duty." RCW 9A.16.020(1). Where the use of force is reasonable, an officer is entitled to state law qualified immunity for assault and battery claims. *See McKinney v. City of Tukwila*, 103 Wn.App. 391, 12 P.3d 631 (2000). Because "[t]he existence of probable cause is a complete defense to an action for false arrest, false imprisonment, or malicious prosecution," *McBride v. Walla Walla County*, 95 Wn.App. 33, 975 P.3d 1029 (1999).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  force applicable to the case at hand.[5]  As the Supreme Court said in *City of Escondido v.*

2  *Emmons*, 139 S. Ct. 500, 504 (2019):

3        "[W]e have stressed the need to identify a case where an officer acting under
      similar circumstances was held to have violated the Fourth Amendment ....  While
4        there does not have to be a case directly on point, existing precedent must place
      the lawfulness of the particular [action] beyond debate ....  Of course, there can be
5        the rare obvious case, where the unlawfulness of the officer's conduct is
      sufficiently clear even though existing precedent does not address similar
6        circumstances ....  But a body of relevant case law is usually necessary to clearly
      establish the answer ...."  *Wesby*, 583 U.S. at ___, 138 S.Ct. at 581. (internal
7        quotation marks omitted).

8        Here, the governing case law in no way makes it clearly established that Deputy Smith

9  could not take down Petersen and employ the VNR.  Recently the Ninth Circuit ruled that it has

10  been clear that as of 2013 it was clearly established that use of a "chokehold" on a non-resisting

11  person violated the Fourth Amendment.  *See Tuuamalemalo v. Greene*, 946 F.3d 471, 477

12  (2020), *citing Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013).  And even prior to that, use

13  of force to restrain an already subdued detainee by multiple officers, where there is no longer any

14  resistance, was known to violate the Fourth Amendment.  *See Drummond ex. Rel. Drummond v.*

15  *City of Anaheim*, 343 F.3d 1052, 1054-55, 1059 (9th Cir. 2003) (three police officers, after

16  taking down the detainee/decedent, put him in cuffs with his arms behind his back as [he] lay on

17  his stomach while the officers put their knees and body weight on his neck and back, and while

18  "some force was surely justified" ... "officers – indeed, any reasonable person – should have

19  known that squeezing the breath from a compliant, prone, and handcuffed individual despite his

20  pleas for air involves a degree of force that is greater than reasonable").  Compare with *Gregory*

21  *v. County of Maui*, 523 F.3d 1103, 1105-07 (9th Cir. 2008) (officers' use of force was reasonable

22

23  _____
      [5]  Petersen skips over this analysis and simply says that because a VNR is lethal it was excessive, but that does not
      have the backing of any decisional law analyzing excessive force claims. Because of the specificity required to
24  demonstrate that the use of the VNR was constitutionally prohibited, it is simply not enough to say the VNR is lethal
      and skip qualified immunity analysis.

1   even though the individual "repeatedly shouted that he could not breathe," where the officers had

2   received reports the detainee was under the influence, was acting in a bizarre manner, was

3   holding a pen though he did not engage, repeatedly failed to comply with commands to put down

4   the pen, and, unlike *Drummond*, the officers "ceased using force once Gregory was handcuffed").

5          None of the factors in *Drummond* or *Tuuamalemalo*, are present here.  There were not

6   multiple officers, and in fact, Deputy Smith was alone.  Petersen was not subdued and was, in

7   fact, resisting, despite being told to "stop resisting" – like every other command he was given, he

8   ignored – which warranted tightening of the grip to momentarily put Petersen unconscious.  The

9   use of the VNR was to gain control and then not used once control was gained and Petersen

10  subdued.

11         There is no case describing the contours of the right to show that Deputy Smith's use of

12  force under the particular and unique circumstances he was faced with was precluded.  Deputy

13  Smith did not have back-up, his repeated commands were ignored, there were unknown risks

14  inside Petersen's house, and he had a ride-along passenger and an unattended driver.  Moreover,

15  Deputy Smith's use of the VNR was only for a matter of seconds, did not cause injury, and the

16  pressure sufficient to cause loss of consciousness was only used when Petersen refused to obey

17  the "stop resisting" command, which Petersen acknowledges Deputy Smith was "screaming" at

18  him.  This was not a prolonged use of the VNR.  There is simply no case law that clearly

19  establishes the use of the VNR in these circumstances is prohibited by the Fourth Amendment

20  and from which Deputy Smith would have found fair warning in case law that he could not use

21  the VNR.  Deputy Smith is entitled to qualified immunity.

22      **C.      THERE IS NO BASIS TO HOLD THE COUNTY LIABLE BECAUSE
               THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION AND
23             THE COUNTY DID NOT ACT WITH DELIBERATE INDIFFERENCE**

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 21
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

Petersen also claims the County should be liable because it trains and authorized deputies to use the VNR.  Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, but the County cannot be held liable under §1983 based on a theory of respondeat superior.  *Monell*, 436 U.S. at 690-91; *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In order to establish municipal liability, a plaintiff must show that the defendant acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights, or that the County ratified the unlawful conduct.  *See Monell,* 436 U.S. at 690-91.  Further, a plaintiff must demonstrate that the defendants' policies were the "moving force" behind the constitutional deprivation.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).

Here, however, there is no basis for *Monell* liability because Petersen's rights were not violated at all.  As such, the Court need not inquire further.  *See, e.g., Jackson,* 268 F.3d at 653 ("Neither a municipality nor a supervisor … can be held liable under § 1983 where no injury or constitutional violation has occurred") (*citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point").  Because Petersen is entitled to qualified immunity either because there was no constitutional violation or because there was no clearly established right violated, the County should also be dismissed.

In addition, "As our §1983 municipal jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 22
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Com'rs v. Brown,* 520 U.S. 397,404.

The Pierce County Sheriff's Department does not take use of the VNR lightly.  It regularly trains and requires annual certification for the deputies that are qualified to use VNR.  In addition, it monitors use of force and use of VNR to keep track of injuries and so forth.  Based on a recent review of use of force reports, Pierce County Sheriff's Deputies have not caused injuries, as was the case here.  This is not an agency acting with deliberate indifference toward citizens when authorizing VNR.

**D.    PETERSEN HAS NOT DEMONSTRATED ENTITLEMENT TO DECLARATORY JUDGEMENT**

Petersen's complaint requests a declaratory judgment as does his partial motion for summary judgment.  However, there is no basis for the declaratory judgment because there is no showing that a constitutional violation occurred, and it is speculative that one will occur.

First, standing to challenge any future conduct by the County requires showing of "continuing present adverse effects" or "a real and immediate threat" of constitutional injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  Here, as shown above, there is no showing of a constitutional injury.  Use of the VNR in this case did not violate a clearly established constitutional right, and it is speculative at-best that there will be a Fourth Amendment violation based on the use of the VNR in the future, especially given the data showing the lack of bodily injuries associated with the VNR.  Petersen cannot establish a likelihood of substantial and immediate irreparable injury.  *See Lyons*, 461 U.S. at 103.

Finally, as the U.S. Supreme Court states:

Even in an action against private individuals, it has long been held that an injunction is "to be used sparingly, and only in a clear and plain case."  When a

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

plaintiff seeks to enjoin the activity of a government agency, even within the
unitary court system, his case must contend with "the well-established rule that
the government has traditionally been granted the widest latitude in the dispatch
of its own internal affairs."

*Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citations omitted, emphasis added).

## V.    CONCLUSION

For the foregoing reasons, Deputy Smith and Pierce County respectfully request this

Court dismiss all claims in this matter. Deputy Smith did not violate a clearly established

constitutional right and therefore is entitled to qualified immunity. Because Smith is entitled to

qualified immunity, the County cannot be held liable. Furthermore, the blanket assertion that use

of the VNR is unconstitutional is without merit.

DATED this 5th day of November, 2020.

MARY E. ROBNETT
Prosecuting Attorney

s/ PETER HELMBERGER
PETER HELMBERGER, WSBA # 23041
Pierce County Prosecutor / Civil
955 Tacoma Avenue South, Suite 301
Tacoma, WA  98402-2160
Ph: 253-798-7303 / Fax: 253-798-6713
peter.helmberger@piercecountywa.gov

## CERTIFICATE OF SERVICE

On November 5, 2020, I hereby certify that I electronically filed the foregoing
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PROPOSED ORDER with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to the
following:

- **Joseph R Shaeffer:** Joe@mhb.com, chrisb@mhb.com,
- **Mika K Rothman:** mikar@mhb.com, cristyc@mhb.com; MarryM@mhb.com

s/ NADINE BRITTAIN
NADINE BRITTAIN
Legal Assistant

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24
Petersen MSJ
USDC WAWD No. 3:19-cv-06033-BHS-MAT

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713