HONORABLE MARY A. THEILER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| SHAWN PETERSEN,<br><br>                  Plaintiff,<br><br>          v.<br><br>DEPUTY MATTHEW SMITH, an individual,<br>and PIERCE COUNTY, a municipal<br>corporation,<br><br>                  Defendant. | No. 3:19-cv-06033-BHS-MAT<br><br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT ON PROBABLE CAUSE<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTING DATE:**<br>**Friday, DECEMBER 4, 2020** |

## I.  <u>INTRODUCTION</u>

Absent "physical interfer[ence] with the police," an individual cannot be punished for "stand[ing] on his own property." *State v. E.J.J.*, 183 Wash. 2d 497, 505, 354 P.3d 815, 819 (2015). Plaintiff Shawn Petersen, who was standing on his own property objecting to police presence outside his house when he was tackled and strangled by Defendant Deputy Smith, respectfully moves for partial summary judgment that Deputy Smith did not have probable cause to arrest Mr. Petersen for "Obstructing a Law Enforcement Officer" and that no reasonable officer could have believed otherwise. Therefore, it is appropriate to enter judgment on liability on the issue of probable cause, that Deputy Smith unreasonably seized Mr. Petersen without probable cause in violation of the Fourth Amendment to the United States Constitution.

MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

MACDONALD HOAGUE & BAYLESS<br>705 Second Avenue, Suite 1500<br>Seattle, Washington 98104<br>Tel 206.622.1604  Fax 206.343.3961

## II.    STATEMENT OF FACTS

### A.    Deputy Smith Arrested Mr. Petersen for Making Verbal Requests and Approaching the Patrol Car

Deputy Matthew Smith arrested Shawn Petersen on the night of May 23, 2019, following a verbal exchange in front of Mr. Petersen's home.[1] In this case, there is no factual dispute as to the events leading up to the arrest because Mr. Petersen's porch and cell phone video captured the events in their entirety. *See* Dkt. 22 (Pltff's MPSJ).

As the videos of this incident show, Mr. Petersen made several requests of Deputy Smith to move his traffic stop down the road, away from Mr. Petersen's home. *Id*. When Deputy Smith ignored Mr. Petersen's initial requests, Mr. Petersen then asked for Deputy Smith's badge number and supervisor. *Id*. Mr. Petersen stood in his driveway, far away from Deputy Smith's patrol car, for all but the final 20 seconds of the encounter, when he walked a few steps closer. *Id*. At that moment, Deputy Smith got out of the car and walked towards Mr. Petersen, rapidly closing the distance between them. *Id*. Another short verbal exchange led to Deputy Smith tackling Mr. Petersen to the ground, applying a strangulation vascular neck restraint technique on Mr. Petersen that caused Mr. Petersen to lose consciousness. *Id*. When Mr. Petersen regained consciousness, Deputy Smith arrested him for Obstructing a Law Enforcement Officer and Resisting Arrest, and booked him into jail. *Id*.

Following the arrest, Deputy Smith completed an Arrest Report. For the purposes of this motion only, Mr. Petersen does not dispute Deputy Smith's statements in the Arrest Report. In the "Probable Cause" field, Deputy Smith wrote:

> The Deputy conducted an unrelated traffic stop on a county right of way. The vehicle was stopped for being a possible intoxicated driver. The subject/arrestee (Unrelated with the traffic stop) ran out of his residence. The subject was belligerent and started yelling at the Deputy to not conduct a traffic stop in front of his residence. The Deputy told the subject to not interfere with his investigation and to stay back. The subject continued to yell at the Deputy. The Deputy asked the subject to go inside and he will talk to him when the traffic stop concluded. The subject came back outside and despite being asked not to, inserted himself into the investigation, put his hand in his right pocket, and created a serious

---

[1] A detailed description of the facts leading up to the arrest is included in Plaintiff's October 22 Motion for Partial Summary Judgment, Dkt. 22.

officer's safety concern. The Deputy told the subject he was under arrest and attempted to handcuff him. The subject pulled away and resisted the arrest.

Dkt. 23, Ex. 9 (Arrest Report). In the "Narrative" field, Deputy Smith documented Mr. Petersen's specific actions as follows:

- "**yelling** at me belligerently …"

- "**told** me that I was on private property …"

- "**told** me to get my supervisor …"

- "kept **yelling** at me that it was private property …"

- "**ordered** me to move this traffic stop …"

- "**came out** one more time holding a phone in one hand and buried his right hand into his pocket…"

- quickly **approached** the right front passenger door … and got within feet from my patrol vehicle and investigation."

*Id*. (emphasis added). Deputy Smith characterized Mr. Petersen's actions as "continu[ing] to delay and hinder my stop/contact" and "voluntarily insert[ing] himself into my investigation one more time." *Id*. Of course, simply reciting the language of a criminal statute does not create probable cause where none exists. *See* RCW 9A.76.020(1) ("A person is guilty of obstructing a law enforcement officer if the person **willfully hinders**, **delays, or obstructs** any law enforcement officer in the discharge of his or her official powers or duties.) (emphasis added). Nevertheless, Mr. Petersen was booked into Pierce County jail and charged with Obstructing a Law Enforcement Officer and Resisting Arrest. Dkt. 23, Ex. 9. Pierce County Deputy Prosecutor Beaumont Baily later dropped all charges. Dkt. 23, Ex. 16.

**B.      Deputy Smith's Definition of "Obstruction" Would Criminalize Any Speech an Officer's Perceives to Delay Him, Even Momentarily**

Deputy Smith's explanation of the alleged obstruction criminalizes speech that is unaccompanied by conduct. Deputy Smith testified that Mr. Petersen was "technically [ ] inserting himself because he's out here yelling at me and causing me to take my attention off the driver and focus on him …" and "hindering and delaying me from doing my official duties" with

MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   his "[v]oice and the way he's coming out and his aggressiveness…" Shaeffer Dec. Ex. 1

2   (Smith Deposition at 34:16-18; 34:24-35:2). Deputy Smith stated that Mr. Petersen was "taking

3   [his] attention off the reason [he] made the stop" … "because [he] had to address Mr. Petersen."

4   *Id.* at 33:4-5. Deputy Smith also explained that Mr. Petersen "inserted" [2] himself in the situation

5   "prolong[ing] this entire stop because of his actions." *Id*. at 33:23. But the first verbal exchange

6   between Mr. Petersen and Deputy Smith happened in less than one minute, and Deputy Smith

7   never even broke stride in his dealing with the traffic stop.  There was no delay or prolongment.

8   When Mr. Petersen came out of his house the second time to record the interaction on his

9   cellphone, Deputy Smith had already concluded his investigation. According to Deputy Smith,

10   when Mr. Petersen "reappeared,"

> I returned to the driver's seat of the vehicle. From my contact with the driver of the stopped vehicle, **I did not notice any obvious signs of impairment.** The driver told me some food fell to the passenger floorboard while he was turning onto Mundy Loss Rd E from State Route 410 E. The driver told me he was reaching towards to the passenger floorboard to retrieve the food. That action caused his vehicle to swerve into the oncoming lane of travel. Although, **he was not impaired,** there were still some stuff that needed to be done before I could end the traffic stop.

16   Dkt. 30 at ¶6, 7 (Decl. of Smith) (emphasis added).  In other words, by the time he approached

17   Mr. Petersen, Deputy Smith had already determined that the driver presented no risk.

18       Additionally, Deputy Smith contradicts himself by claiming that Mr. Petersen took away

19   his attention from the traffic stop **and** prevented him from de-escalating the situation.

20   Deputy Smith testified that "dialogue and talking helps people." Shaeffer Dec. Ex. 1

21   (Smith Deposition at 38:8-12). But Deputy Smith did nothing to de-escalate the situation, instead

22   shouting a few verbal commands at Mr. Petersen. *Id*. at 37:22. Any perceived "obstruction" was

23   due to Deputy Smith's own failure remain calm and to de-escalate the situation. Nevertheless,

24   Deputy Smith testified that Mr. Petersen "didn't give me the opportunity [to de-escalate because]

25   he comes out and immediately starts yelling and screaming." *Id*. at 35:22-23.

26

27   _____

[2] The word "inserts" implies that Mr. Petersen somehow got in between Deputy Smith and something or someone.  As the video shows, that was never the case here.

MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1    In total, Mr. Petersen's actions allegedly preventing Deputy Smith from de-escalating the

2  encounter amounted to "yelling and screaming." *Id*. at 36:23-25. It is undisputed that

3  Mr. Petersen never came between Deputy Smith and the driver of the stopped vehicle nor made

4  any verbal threats towards Deputy Smith. *Id*. at 34:4-6, 41:17-19.

5                                    III.    **ARGUMENT**

6    Summary judgment shall be granted "if the movant shows there is no genuine dispute as

7  to any material fact and the movant is entitled to judgment as a matter of law." *FRCP 15(a)*.

8  Summary judgment is warranted where the documentary evidence produced by the parties

9  permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

10    The facts set forth above show that Deputy Smith did not have probable cause to believe

11  that Mr. Petersen committed the crime of Obstructing a Law Enforcement Officer. Mr. Petersen

12  stood on his own property and criticized Deputy Smith, actions that fall short of willfully

13  hindering, delaying or obstructing Deputy Smith in carrying out any official duty.

14    **A.    Deputy Smith Did Not Have Probable Cause to Arrest Mr. Petersen for**
            **Obstruction of a Law Enforcement Officer**

15

16    "Probable cause" to arrest exists where, at the moment of the arrest, "the facts and

17  circumstances within [the officers'] knowledge and of which they had reasonably trustworthy

18  information were sufficient to warrant a prudent man in believing that the petitioner had

19  committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In other words,

20  "'under the totality of circumstances known to the arresting officers, a prudent person would have

21  concluded that there was a fair probability that [the defendant] had committed a crime.'" *United*

22  *States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007) (quoting *United States v. Smith*, 790 F.2d 789,

23  792 (9th Cir. l986)). To establish probable cause, an officer must be able to articulate facts

24  supporting "individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S.

25  32, 37 (2000). A court determining whether an officer had probable cause for arrest must

26  "examine the events leading up to the arrest, and then decide whether these historical facts,

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1  viewed from the standpoint of an objectively reasonable police officer, amount to probable

2  cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted).

3  Deputy Smith arrested Mr. Petersen for "Obstructing a Law Enforcement Officer" in

4  violation of RCW 9A.76.020. Dkt. 2, Ex. 18 (Booking Form). The statute criminalizes "willfully

5  hindering, delaying, or obstructing" any law enforcement officer in the discharge of his or her

6  official powers or duties. RCW § 9A.76.020. Deputy Smith states that Mr. Petersen hindered him

7  by "yelling at me and causing me to take my attention off the driver" and "walking up to my

8  car." Shaeffer Dec. Ex. 1, Smith Dep 34:10-12; 17-18. For the reasons below, neither of these is

9  sufficient to support probable cause to believe Mr. Petersen was committing the crime of

10  "Obstructing a Law Enforcement Officer."

11  **1.     Mr. Petersen's Verbal Requests Do Not Constitute Obstruction**

12  For a short period of just two minutes, Mr. Petersen made repeated requests of

13  Deputy Smith to move the traffic stop farther down the road, away from his home, and for the

14  Deputy's name and badge number. By definition, and as limited by the First Amendment to the

15  U.S. Constitution, these verbal requests cannot support probable cause to believe that Mr.

16  Petersen was committing the crime of Obstructing.

17  The First Amendment "protects a significant amount of verbal criticism and challenged

18  directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).

19  "[O]bstruction statutes may not be used to limit citizens' right to express verbal criticism, even

20  abusive criticism, at police officers." *State v. E.J.J.*, 183 Wash. 2d 497, 507 (2015). Even though

21  police "may resent having obscene words and gestures directed at them, they may not exercise

22  the awesome power at their disposal to punish individuals for conduct that is not merely lawful

23  but protected by the First Amendment." *Gulliford v. Pierce Cty.*, 136 F.3d 1345, 1350 (9th

24  Cir.1998).

25  In *City of Houston, Tex. v. Hill*, police officers arrested Hill for yelling at them "pick on

26  somebody your own size" after they had approached Hill's friend. 482 U.S. 451 (1987). The

27  officers arrested Hill pursuant to a city ordinance that prohibited "oppos[ing], molest[ing],

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

abus[ing] or interrupt[ing] any policeman in the execution of his duty." *Id.* at 455, 107 S.Ct. at 2506. The Supreme Court found the ordinance unconstitutional for "prohibit[ing] speech that in any manner … interrupts an officer," and emphasized that "[t]he Constitution does not allow such speech to be made a crime." *Id.*, at 462–63 (1987). *See also United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) ("The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is likely to 'produce a clear and present danger of a serious substantive evil.'") (quoting *Hill*, 482 U.S. at 461); *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir.1995) ("Even when crass and inarticulate, verbal challenges to the police are protected.").

By the same token, Washington Courts have overturned Obstruction convictions based on speech alone. In *State v. E.J.J*, the minor defendant stood in front of his home and requested that the officers not use their nightstick on his sister, whom they were escorting out of E.J.J.'s house. 183 Wash. 2d 497 (2015). The officers ignored his request and told him to return to the house. E.J.J did not comply and began yelling at the officers, who then put E.J.J under arrest for obstructing a law enforcement officer. *Id.* The Washington Supreme Court overturned the conviction, explaining that "a conviction for obstruction may not be based solely on an individual's speech because the speech itself is constitutionally protected." *Id.* at 502; *See also State v. Williams*, 171 Wash. 2d 474, 485 (2011) (noting the court's "jurisprudential history of requiring conduct in addition to pure speech in order to establish obstruction of an officer.")

Here, the interaction between Mr. Petersen and Deputy Smith is nearly identical to that of E.J.J. and the arresting officers. Mr. Petersen stood in front of his home—on his own property—and made requests of Deputy Smith. Dkt. 23, Exs. 12, 13. As Deputy Smith ignored Mr. Petersen's initial requests, Mr. Petersen became louder and terser. *Id.* Deputy Smith eventually yelled back at Mr. Petersen to go back into his house, "get out of my sight," and "get out of my stop right now." *Id.* There was no "hindrance" or "delay." At no time during the traffic stop did Deputy Smith even break his stride, let alone give any indication that he was hindered or delayed by Mr. Petersen's speech.

MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

By the time Mr. Petersen came out of his house the second time to record the interaction on his cellphone, Deputy Smith had *already concluded* that the driver of the stopped vehicle "was not impaired," Dkt. 30 at ¶7, so there was nothing that Mr. Petersen was dividing his attention from, and certainly nothing dangerous or criminal. Even if Deputy Smith was distracted by Mr. Petersen's verbal criticisms, he cannot conceal the unconstitutional conduct of making an arrest based on Mr. Petersen's speech by overstating the minor delay in resolving "some stuff that needed to be done before [he] could end the traffic stop." *Id*. Mr. Petersen's verbal requests are protected First Amendment speech and cannot constitute Obstruction.

## 2. Deputy Smith's Reaction to the Verbal Requests Does Not Make Mr. Petersen's Words a Crime

Deputy Smith additionally claims that Mr. Petersen committed Obstruction because Mr. Petersen continued to make verbal requests, taking attention away from the traffic stop, and did not give him the opportunity to de-escalate the encounter.

The operative language of the Obstructing statute, "hinder, delay, or obstruct[,] applie[s] to conduct, not speech." *State v. Williams*, 171 Wash. 2d 474, 483 (2011) (citations omitted). Allowing the **effects** of verbal requests – causing a distraction and prolonging the traffic stop – to justify an arrest for Obstructing would "give the State 'a mask for unconstitutional conduct.'" *E.J.J.*, 183 Wash.2d at 507 (quoting *Wilson v. Kittoe*, 229 F.Supp.2d 520, 532 (W.D. Va. 2002), *aff'd*, 337 F.3d 392 (4th Cir. 2003)).

It is true that Mr. Petersen moved forward, but he was still on his own property. The Washington Supreme Court made clear years ago that absent "physical interfer[ence] with the police," an individual cannot be held liable for "stand[ing] on his own property." *E.J.J.*, 183 Wash. 2d at 505. Thus, that an individual's "behavior may have caused a minor delay is of no import" to the sufficiency of probable cause for Obstructing. *Id.* at 506. Though there may be a "more convenient resolution of the situation, '[s]tates cannot consistently [sic] with our Constitution abridge those freedoms to obviate slight inconveniences or annoyances.'" *Id.* (quoting *Giboney v. Empire Storage*, 336 U.S. 490, 501–02, 69 S.Ct. 684).

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Here, Deputy Smith describes Mr. Petersen's verbal requests as interfering or hindering, yet he confirms that Mr. Petersen never actually put himself between Deputy Smith and the driver of the stopped vehicle. Smith Dep at 34:4-6. Deputy Smith's testimony demonstrates that Mr. Petersen's verbal requests were merely an annoyance, as he was trying to "get [Mr. Petersen] back inside so I could get this traffic stop stopped, and … move on." *Dkt. 30* at 7; Ex. 1, *36:3-5*. Though Deputy Smith may have been distracted or taken longer to complete "some stuff that needed to be done" after the traffic stop, Deputy Smith points to "yelling and screaming" as the ways in which Mr. Petersen "hinder[ed] me and delay[ed] me from doing my official duties." Dkt. 30 at ¶7; Shaeffer Dec. Ex. 1 at 34:24-25. Obstruction requires *conduct* and thus there was no probable cause for Mr. Petersen's arrest.

### 3.     The Law was Clear in May 2019 That Speech Alone Could Not Constitute "Obstruction"

"[W]hether a government official is entitled to qualified immunity is a two-part inquiry: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether that right was clearly established 'in light of the specific context of the case.'" *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir.2011) (*quoting Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. 2151). The undisputed facts stated above show that Deputy Smith unreasonably seized Mr. Petersen without probable cause in violation of the Fourth Amendment to the United States Constitution.

Since at least 1987, the Supreme Court has recognized that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462–63. More specifically, "the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.'" *Gulliford*, 136 F.3d at 1349 (quoting *Hill*, 482 U.S. at 461–63). Under the well-established federal law, "an individual cannot be arrested for mere speech unless the speech

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

constitutes 'fighting words.'" *Id.* (reversing and remanding case for a new trial where a "jury more probably than not found that [a sheriff's deputy] had probable cause to arrest [an individual] based on his words alone…"). Mr. Petersen's Fourth and First Amendment rights to be free from an unreasonable seizure based on protected speech was clearly established at the time of his arrest.

### IV.   <u>CONCLUSION</u>

Plaintiff respectfully requests an order concluding that Deputy Smith did not have probable cause to arrest Shawn Petersen for Obstructing a Law Enforcement Officer, that the law was clear that there could be no probable cause for the charged crime under such circumstances, and no reasonable officer could have believed otherwise.

DATED this _____ day of November, 2020.

MacDONALD HOAGUE & BAYLESS

By: _____
      Joe Shaeffer, WSBA # 33273
      josephs@mhb.com
      Mika Rothman, WSBA # 55870
      mikar@mhb.com
Attorneys for Plaintiff

MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

<u>DECLARATION OF SERVICE</u>

2

The undersigned declares under penalty of perjury according to the laws of the United

3

States and the State of Washington that on this date I caused to be served in the manner noted

4

below a copy of this document entitled **MOTION FOR PARTIAL SUMMARY JUDGMENT**

5

on the following individual(s):

6

<u>Attorneys for Defendant Deputy Matthew Smith:</u>

7

Peter Helmberger, WSBA No. 23041

8

Pierce County Prosecutor / Civil
955 Tacoma Avenue South, Suite 301
Tacoma, WA 98402-2160

9

Telephone: (253) 798-7303
Fax: (253) 798-6713

10

Email: peterhelmberger@piercecountywa.gov; gina.lane@piercecountywa.gov;
Nadine.christian-brittain@piercecountywa.gov

11

[x] Via ECF

12

[  ] Via Facsimile
[  ] Via First Class Mail

13

[  ] Via Email
[  ] Via Messenger

14

[  ] Via Overnight Delivery

15

DATED this 12th day of November, 2020, at Seattle, Washington.

16

17

18

/s/   Marry Marze_____

19

Marry Marze, Legal Assistant

20

21

22

23

24

25

26

27

MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

No. 3:19-cv-06033-BHS-MAT

11910.01 nj300102

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961