UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHAWN PETERSEN,<br><br>               Plaintiff,<br><br>  v.<br><br>MATTHEW SMITH, an individual, and PIERCE COUNTY, a municipal corporation,<br><br>               Defendants. | CASE NO. C19-6033 BHS-MAT<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Mary Alice Theiler, United States Magistrate Judge, Dkt. 50, Plaintiff Shawn Petersen's objections to the R&R, Dkt. 51, and Defendants Pierce County Sheriff's Department and Deputy Matthew Smith's response to objections, Dkt. 52.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This suit arises from a traffic stop of a suspected impaired driver, which Smith conducted outside Petersen's residence. Smith was accompanied by a ride-along passenger. Petersen repeatedly asked Smith to do the stop somewhere else. After Petersen approached Smith's police vehicle, Smith told Petersen he was going into handcuffs, then

tackled him and applied a vascular neck restraint ("VNR") hold. Smith contends he observed a knife Petersen admittedly had in his pocket but did not instruct Petersen to drop the knife or hold up his hands prior to approaching him. Petersen lost consciousness. After he regained consciousness, Smith arrested him for obstruction and resisting arrest. Charges were filed and subsequently dismissed by the Pierce County Prosecutor.

On November 1, 2019, Petersen sued Smith, alleging violation of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983. Dkt. 1. On May 28, 2019, Petersen amended his complaint, naming Pierce County as an additional defendant and alleging it is also liable for the deprivation of his Fourth Amendment rights pursuant to § 1983. Dkt. 16.

On October 22, 2020, Petersen moved for partial summary judgment on his claims related to the VNR policy (that VNR constitutes deadly force, that Smith violated the Fourth Amendment by using deadly force when it was not warranted, and that Pierce County policy authorizing VNR in such situations caused the Fourth Amendment violation). Dkt. 22. On November 5, 2020, Defendants moved for summary judgment on the absence of any constitutional violation or basis for municipal liability and on Smith's entitlement to qualified immunity. Dkt. 28. On November 12, 2020, Petersen filed a second motion for partial summary judgment as to probable cause for his arrest for obstruction. Dkt. 34.

On February 11, 2021, Judge Theiler issued the instant R&R, denying both of Petersen's motions for partial summary judgment and denying Defendants' motion for summary judgment. Dkt. 50. On February 25, 2021, Petersen filed objections. Dkt. 51.

On March 10, 2021, Defendants responded. Dkt. 52. On March 30, 2021, Petersen filed a notice of supplemental authority. Dkt. 53. Defendants responded to the notice, Dkt. 54, and Petersen objected to the response, Dkt. 55.[1]

## II.  DISCUSSION

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

**A.  Expert Opinion**

Judge Theiler denied Petersen's first motion for partial summary judgment on the issue of whether VNR constitutes deadly force. She noted that while it is clear that VNR "constitutes, at least, a serious use of force in that it may cause death or serious injury," Dkt. 50 at 17 (citing *Hunter v. City of Federal Way*, No. 18-35666, 2020 WL 1172732, at *1 (9th Cir. 2020)), the parties present conflicting evidence about whether the Pierce County Sheriff's Department's ("PCSD") *specific* policy constitutes deadly force. Deadly force, under federal and state law, is force that creates a substantial risk of or is reasonably likely to cause death or serious injury. *Id.* (citing *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005); RCW 9A.16.010(b)).

---

[1] The Court considers only the supplemental authority and does not rely on either party's statements regarding the import of the authority. Local Rules W.D. Wash. LCR 7(n) ("Before a court rules on a pending motion, a party may bring to the court's attention relevant authority issued after the date the party's last brief was filed by serving and filing a Notice of Supplemental Authority that attaches the supplemental authority without argument.").

1       Petersen contends that Judge Theiler improperly relied on PCSD Sergeant Jason

2 Youngman's testimony and his study of PCSD's use of VNR to find a dispute of fact.

3 Dkt. 51 at 2. Many of the arguments in support of this objection are the same arguments

4 Judge Theiler considered and rejected in the R&R.[2] For example, Petersen contends that

5 Youngman is not qualified to provide opinion testimony under Federal Rule of Evidence

6 702. *Id*. at 4. Judge Theiler noted Petersen's argument that Youngman lacked

7 qualification to opine on the medical risks of VNR and that the PCSD study suffered

8 from deficiencies including a lack of peer review or appropriate medical evaluation. Dkt.

9 50 at 14. She credited Petersen's "legitimate questions" about Defendants' evidence. *Id*.

10 at 17. However, she concluded that these questions go to the weight, scope, and

11 credibility of Defendant's evidence rather than its admissibility. *Id*. at 17–18.

12       The Court agrees with Judge Theiler that, at a minimum, enough of Youngman's

13 testimony is admissible to preclude summary judgment on the question of whether VNR

14 constitutes deadly force. His knowledge, training, and experience are sufficient to qualify

15 him as an expert on the use of force, and his relevant testimony includes the use of VNR

16 as employed by PSCD, its training methods on the practice (including performing it on

17 trainees), and PSCD's maintenance of records and awareness or lack thereof regarding

18 negative outcomes associated with VNR.

19       Federal Rule of Evidence 702 provides that a witness may qualify as an expert by

20 knowledge, skill, experience, training, or education, and may testify in the form of an

---

[2] Petersen emphasizes that Youngman was not disclosed as an expert, Dkt. 51 at 2, but does not move to exclude his testimony on this basis.

opinion if the specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue, the testimony is based on sufficient facts or data, it is the product of reliable principles and methods, and the expert reliably applies the principles and methods to the facts of the case. Youngman declares that he is a Washington State Criminal Justice Training Center Master C/DT Instructor and the Lead Defensive Tactics Instructor for PCSD, a title that he attained in 2015 which required over 360 hours of training and testing in force tactics. Dkt. 31, ¶ 2. To maintain that title, he has attended 40 hours of training each year since 2015. *Id*. He trains PCSD deputies in an 8-hour course on use of VNR which includes specific instruction on PSCD limitations on its use as well as application of VNR to the deputies being trained. *Id*., ¶¶ 4–5. He also declares that PCSD monitors the use of VNR to ensure it is not used for excessive periods and that he reviewed all reported uses of VNR between 2016 and 2019 to create a "study" on VNR outcomes. *Id*., ¶¶ 6–7.

While Petersen contends that his expert's medical opinion is unrebutted, deciding the degree of risk attributable to a particular use of force is not solely a medical inquiry. Use of force is not a medical practice; police practices expertise is also relevant to the likelihood that a tactic would cause death or serious injury. A rational jury may credit the testimony of a police practices expert relying on the department policy in determining whether officers' conduct comported with law enforcement standards. *Smith*, 394 F.3d at 703 (citations omitted). "Fed. R. Evid. 702 permits expert testimony comparing conduct of parties to the industry standard," which is applicable to police practices. *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484–85 (9th Cir. 1991) (citation omitted), *superseded by*

*statute on other grounds as stated in Davis v. City & Cnty. of S.F.*, 976 F.3d 1536, 1556 (9th Cir. 1992). As Judge Theiler correctly noted, the County's awareness of injuries caused by VNR is relevant to the jury's determination of whether the force used here created a substantial risk of or was reasonably likely to cause death or serious injury. *See Valenzuela v. City of Anaheim*, C17-0278, 2019 WL 2949035, at *10 (C.D. Cal. Feb. 12, 2019) (relevant that though policy on carotid restraint acknowledged risk of injury, police department continued to train on use in non-deadly force circumstances despite its own Office of Independent Review's contrary recommendation).

Whether or not Youngman's study in its current form would be admissible at trial, Defendants argue persuasively that experts in the field of use of force would rely on the practical history of tactic in forming their opinion, consistent with Federal Rule of Evidence 703's instruction that an expert may base an opinion on facts or data that experts in the particular field would reasonably rely on in forming an opinion, facts which need not be admissible for the opinion to be admitted. Dkt. 52 at 5–6. Moreover, the records underlying the study, which Youngman contends show no injury attributable in 330 reported uses of VNR by PSCD between 2016 and 2019, Dkt. 31, ¶ 7, are evidence relevant to the likelihood of injury resulting from VNR. Petersen's objections to the medical adequacy of PCSD processes for monitoring negative outcomes associated with VNR are best addressed through cross-examination. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence."). Therefore, the Court adopts the R&R's denial of Petersen's first motion for summary judgment.

**B.     Probable Cause for Obstruction**

Judge Theiler denied Petersen's second motion for partial summary judgment on the issue of probable cause to arrest for obstruction. She carefully analyzed the disputed and undisputed facts and the available inferences and concluded that summary judgment was not appropriate because there are genuine, material disputes regarding the facts and circumstances within Smith's knowledge. Dkt. 50 at 23 (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)). Petersen contends that Judge Theiler misapprehends the controlling authority on the First Amendment's limitation on obstruction crimes and relies on "speculative assertions by Smith that are blatantly contradicted by the factual record." Dkt. 51 at 6.

First, Petersen repeats the same arguments presented in his motion for summary judgment on First Amendment authority, analogizing the facts of *City of Houston v. Hill*, 482 U.S. 451 (1987), and *State v. E.J.J.*, 183 Wn.2d 497 (2015), to the facts of this case. *Compare, e.g.*, Dkt. 51 at 9 ("Applying the holding and reasoning in *E.J.J.* to the nearly identical scenario here, no reasonable trier of fact could find that Smith had probable cause to arrest Plaintiff for obstruction. Like in *E.J.J.*, Plaintiff stood in front of his home—on his own property—and made verbal requests of Deputy Smith.") *with* Dkt. 34 at 7 ("Here, the interaction between Mr. Petersen and Deputy Smith is nearly identical to that of E.J.J. and the arresting officers. Mr. Petersen stood in front of his home—on his own property—and made requests of Deputy Smith."). Objections to a R&R are not a

vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16–41–M–DLC–JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases).

Second, Petersen argues that the R&R improperly relies on Smith's speculative allegations to find a dispute of fact. He contends that no reasonable factfinder could conclude his multiple requests that Smith move the stop, contact his supervisor, and provide his name and badge number show intent to obstruct. Dkt. 51 at 10. He further contends that because he never mentioned having a knife or access to other weapons, he stated his wife and child were asleep in the house, Smith never told him to drop the knife, and Smith appeared calm as he exited his car, "no reasonable jury would believe Smith's assertions that [Petersen] posed a threat that necessitated a diversion of attention." *Id.* at 10–11. Defendants make the opposite contention—that no reasonable factfinder could conclude other than that Petersen obstructed Smith by approaching the patrol car. Dkt. 52 at 10.

The R&R carefully considered these issues. The Court agrees with Judge Theiler that genuine disputes of fact preclude resolution of probable cause for obstruction in favor of either party. There are genuine disputes about what Smith could have believed about Petersen's intent based on Petersen's statements. There are also genuine disputes about what Smith could have believed about Petersen's intent based on his conduct in approaching the patrol car. In combination, the Court agrees with Judge Theiler that these disputes require the factfinder to determine whether the facts and circumstances were sufficient to warrant a prudent officer's belief that Petersen willfully hindered, delayed,

or obstructed Smith in the discharge of his official duties. *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir. 1980); RCW 9A.76.020. Therefore, the Court adopts the R&R's denial of Petersen's second motion for summary judgment on probable cause and denial of Smith's opposing motion for summary judgment on Petersen's First Amendment and Fourth Amendment unreasonable seizure claims.

### III.  ORDER

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

(1) The R&R is **ADOPTED**;

(2) Petersen's Motion for Partial Summary Judgment, Dkt. 22, Defendants' Motion for Summary Judgment, Dkt. 28, and Petersen's Motion for Partial Summary Judgment on Probable Cause, Dkt. 34, are **DENIED**, and this matter will be set for trial; and

(3) The Clerk is directed to send copies of this Order to all counsel and to the Honorable Mary Alice Theiler.

Dated this 20th day of April, 2021.

_____
BENJAMIN H. SETTLE
United States District Judge